COUNCIL 81, AFSCME; Local 1832, AFSCME; Local 2030, AFSCME; Local 2031, AFSCME, Petitioners,

v.

STATE DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Respondent.

Superior Court of Delaware, New Castle County.

Submitted June 25, 1982.

Decided July 15, 1982.

Harvey Bernard Rubenstein, Wilmington for plaintiffs.

Matthew J. Lynch, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

WALSH, Judge.

Petitioner, Council 81 of the American Federation of State, County and Municipal Employees (AFSCME), seeks the issuance of a writ of mandamus to require the State Department of Health and Social Services (the Department) to engage in collective bargaining as required by 19 *Del.C.* § 1309.[1] Council 81 has been the exclusive bargaining representative for certain employees of the Department since 1975 under a written agreement which has been automatically renewed by non-action of the parties since July 31, 1976. On August 3, 1981, Council 81 submitted certain proposals to the Department in an effort to re-open the agreement. Representatives of the parties held three meetings, without significant progress, until April 2, 1982, when the Department was reorganized by Executive Order of the Governor. The Department thereafter filed a petition with the State Department of Labor seeking to split the existing bargaining unit into two units.

The Department has refused to bargain further pending a decision on its splitting petition.

At present the bargaining unit is comprised of approximately 334 employers divided into three county locals. The Executive Order reorganizing the Department seeks to create two new divisions, on functional lines, designated, respectively, as the "Division of Economic Services" and the "Division of Child Protective Services." The Department contends that until its bargaining units are functionally aligned according to the reorganization plan it should not be required to bargain concerning such matters as work schedules, vacations and overtime provisions. Council 81 maintains that many features of the agreement will remain unaffected by the realignment and the Department's refusal to address such matters through collective bargaining is unreasonable and in defiance of the statutory mandate. The Department's splitting petition is apparently at the first level of administrative determination with the final step—the approval of the Director of the Labor Department—expected within three months.

The issue presented is whether the Department may properly refrain from further bargaining while the splitting petition is pending. If not, the mandatory language of § 1309 would authorize the issuance of a writ of mandamus sending it back to the bargaining table.

While the Department concedes that a majority of the items subject to collective bargaining will be unaffected by the reorganization, it argues that the current indefinite status of the unit renders it inappropriate to bargain. The Department relies upon two decisions which lend superficial support to its position. In *Appeal of University System of New Hampshire*, N.H. Supr., 120 N.H. 853, 424 A.2d 194 (1980), the State University refused to negotiate with a newly certified bargaining unit while an appeal of the certification ruling was pend-

1. "The public employer may engage in collective bargaining with the exclusive bargaining representative and no public employer shall refuse to engage in collective bargaining with the exclusive bargaining representative."

ing. The Court agreed that an employer should not be forced to negotiate while it has a "good faith" appeal pending. But the rationale for the ruling—that the negotiations once undertaken may prove unnecessary—has little application here. The Department is not contesting the standing of Council 81 to negotiate on behalf of all employees of both prospective units and, as previously noted, it concedes that appropriate areas for bargaining exist.

The second decisional authority cited by the Department supports its thesis that good faith reorganization of the bargaining unit is a proper basis for refusal to bargain. But *Frito-Lay, Inc. and Sales Driver & Dairy Employees, Local 166, etc.*, 177 NLRB 85 (1969) involved a direct review of the appropriateness of the bargaining unit coupled with an unfair labor practice charge for failure to bargain while the certification was under appeal. Here, the Court is not asked to review a determination of appropriate certification. The administrative process has not run its course, and there is no indication that either party will contest the ultimate unit designation. While the identity of the units may change, the substantive issues for negotiation and the identity of the parties negotiating those issues (Council 81 representatives vis-a-vis Department designees) will not be significantly altered by the Secretary of Labor's ruling.

The principle that the employer must continue to bargain with the certified employee representative unless and until a new bargaining unit has been certified has long been recognized in the federal law of labor relations. See *Brooks v. NLRB*, 348 U.S. 96, 103, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954); *National Labor Relations Board v. Swift & Co.*, 3rd Cir., 162 F.2d 575 (1947); *National Labor Relations Bd. v. Sanson Hosiery Mills*, 5th Cir., 195 F.2d 350 (1952); *McLean v. National Labor Relations Board*, 6th Cir., 333 F.2d 84 (1964). These cases also decry the employer's unwillingness to continue bargaining while a decertification proceeding is pending. The compelling nature of the employer's obligation was defined by the Supreme Court in *Brooks*:

"Petitioner contends that whenever an employer is presented with evidence that his employees have deserted their certified union, he may forthwith refuse to bargain. In effect, he seeks to vindicate the rights of his employees to select their bargaining representative. If the employees are dissatisfied with their chosen union, they may submit their own grievance to the Board. *If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit. Although the Board may, if the facts warrant, revoke a certification or agree not to pursue a charge of an unfair labor practice, these are matters for the Board; they do not justify employer self-help or judicial intervention.*" (75 S.Ct. 181) (emphasis supplied)

While the employer's duty to continue to bargain collectively under federal law is based on a substantial body of decisional law, it is statutorily announced at the State level and is contained within the definition of the term "collective bargaining." Section 1301(5) provides:

"(5) 'Collective bargaining' means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith and to execute a written agreement with respect to employment relations, except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter."

The Department argues that while it recognizes its statutory obligation to bargain generally, it is simply unreasonable to bargain at a time when the status of the unit is in question. But, as previously noted, there is much in the present relationship between Council 81 and the Department which will not change regardless of the outcome of the realignment petition and there is no intimation that Council 81 will

not be on the other side of the table when bargaining resumes. If one of the purposes in giving public employees the right to organize is to encourage discussion between employer and employees on matters of common concern, the minimum required of the employer is participation. Good faith negotiation implies that the employer will act responsibly to discharge its duty under the statute. *State v. American Fed. of State, C. & M. Emp., Loc. 1726*, Del.Ch., 298 A.2d 362 (1972). That good faith effort is lacking if the employer denies the exclusive representative of the employees the opportunity to negotiate concerning matters which the employer recognizes as within the ambit of ultimate agreement.

■ Having determined that the Department has a duty to negotiate, I hasten to add that I fix no precise timetable, format or agenda for such negotiation. Given the somewhat desultory history of bargaining between these parties, the petitioner should hardly expect that a race to the bargaining table will take place. But in view of the employer's obligation under the statute and the entitlement of the petitioner to maintain whatever momentum the bargaining process has acquired, the writ should issue if it serves no other purpose than as a prod to the Department to address its statutory duty.[2]

A writ of mandamus will issue directing the Department to resume collective bargaining at the earliest feasible opportunity.

IT IS SO ORDERED.

---

**2.** The appropriateness of mandamus as a remedy is heightened by the Chancery Court's recent refusal to grant relief to Council 81 on the ground that an adequate remedy existed at law. *Council 81 et al. v. State Dept. of Health and Social Services*, Civil Action No. 6783 (1982)—New Castle County. Letter Opinion, Hartnett, V.C., May 4, 1982.